UNITED STATES DISTRICT CO1URT
WESTERN DISTRICT OF NEW YORK

LORETTA CARR-STOCK,

                Plaintiff,

     v.                                 **DECISION AND ORDER**
                                        11-CV-31S

ORTHOTIC REHABILITATION
PRODUCTS, INC.,

                Defendant.

# I. INTRODUCTION

Plaintiff Loretta Carr-Stock alleges that Defendants Orthotic Rehabilitation Products, Inc. ("Orthotic") intentionally manufactured and sold Wrist/Hand/Finger Orthosis elements in violation of Plaintiff's Patent No. 6,165,148 and breached an exclusive licensing agreement. Plaintiff asserts two causes of action: patent infringement under 35 U.S.C. §§ 271 and 281, and breach of contract under state law.

Presently before this Court is Defendant's Motion to Dismiss Plaintiff's Complaint for improper service of process, lack of personal jurisdiction, and improper venue, pursuant to Rules 12(b)(2), 12(b)(3), 12(b)(4), and 12(b)(5) of the Federal Rules of Civil Procedure. In the alternative, Defendant moves to change venue to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a). For the following reasons, Defendant's motion is denied.[1]

---

[1]In support of its motion, Defendant filed a Memorandum of Law, with attached Exhibits; and a Reply Memorandum. (Docket Nos. 6, 10.) In opposition to this motion, Plaintiff filed a Memorandum of Law, with attached Exhibits. (Docket No. 9.)

## II.  BACKGROUND

### A.     Facts

The following facts are alleged in the Complaint and are also drawn from declarations filed in support and opposition of Defendant's Rule 12(b)(2) motion.  See Langenberg v. Sofair, No. 03 CV 8339, 2006 WL 2628348, at *5 (S.D.N.Y. Sept. 11, 2006) ("[C]ourts are authorized to rely on affidavits submitted by the parties in deciding a Rule 12(b)(2) motion to dismiss.").

Plaintiff Loretta Carr-Stock is an individual residing in Clarence, New York. (Complaint ("Comp."), Docket No. 1, ¶ 1.) Defendant Orthotic is a corporation incorporated under the laws of Nevada, with its principal place of business in Tampa, Florida.  (Id. ¶ 2.)

Plaintiff is the inventor of the Wrist/Hand/Finger Orthosis.  (Id. ¶ 6.)  Plaintiff was issued a patent for that invention, Patent No. 6,165148, on December 26, 2000.  (Id.) Prior to the issuance of the patent, the parties entered into an agreement on September 13, 1999 for exclusive licensing rights to Plaintiff's patent.  (Id. ¶ 12.)  This agreement permitted Defendant to sell products covered by the patent, and, in exchange, Orthotic agreed to pay Carr-Stock royalties equal to 5% of the gross selling price.  (Id. ¶ 13.)

In September 2009, Orthotic ceased paying royalties.  After notifying Orthotic that it considered Orthotic to be in breach of contract, Carr-Stock brought the instant action. (Affidavit of Loretta Carr-Stock ("Carr-Stock Aff."), Docket No. 9, ¶ 9.)

### B.     Procedural History

Plaintiff commenced this action on January 10, 2011, by filing a complaint in the United States District Court for the Western District of New York.  Defendant filed a Motion to Dismiss, or Alternatively, to Transfer, on February 1, 2011.  Briefing on the motion concluded on February 28, 2011, at which time this Court took the matter under advisement without oral argument.

### III.  DISCUSSION

**A.   Motion to Dismiss Standard**

When challenged with a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant. See In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).  If the court relies on pleadings and affidavits to resolve the motion, rather than a full evidentiary hearing, the plaintiff need make only a *prima facie* showing of personal jurisdiction to carry its burden.  See Distefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001); Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (citing Marine Midland Bank v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)); Langenberg v. Sofair, No. 03-CV-8339, 2006 WL 2628348, at *2 (S.D.N.Y. Sep. 11, 2006).

In determining whether the plaintiff has made this showing, the court is not obligated to draw "argumentative inferences" in the plaintiff's favor.  Robinson, 21 F.3d at 507 (citing Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).  But the pleadings and affidavits, and all doubts arising therefrom, are construed in the light most favorable to the plaintiff. See CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

**B.   Defendants' Motion to Dismiss**

Plaintiff alleges two causes of action against Defendants.  In the first cause of action, brought pursuant to 35 U.S.C. §§ 271 and 281, Plaintiff alleges that Defendant infringed her patent rights.  In the second cause of action, brought pursuant to state law, Plaintiff alleges that Defendant breached its licensing agreement.  Defendant argues that Plaintiff's Complaint should be dismissed under Rules 12(b)(2), 12(b)(3), 12(b)(4), and 12(b)(5) for improper service of process, lack of personal jurisdiction and improper venue,

or, in the alternative, that this suit should be transferred to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a).

This Court will address each of Defendant's challenges in turn.

**1. Insufficiency of Service of Process**

Rule 12(b)(5) allows a party to seek dismissal of an action for insufficient service of process. Fed. R. Civ. P. 12(b)(5). Pursuant to Rule 4(h)(1)(B), service may be effected upon a corporation or association "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or law to receive service of process." In addition, Rule 4(h)(1) provides that service upon a corporation may be made "in the manner prescribed for individuals by subdivision (e)(1)." Rule 4(e)(1), in turn, provides that service may be made "pursuant to the law of the state in which the district court is located, or in which service is effected." New York's service of process rules provide that personal service upon a foreign or domestic corporation may be made "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y.C.P.L.R. § 311(a) (McKinney 2011).

Defendant seeks dismissal of all claims against it on the ground that Plaintiff did not deliver a summons upon an individual authorized to receive service. Plaintiff responds that it delivered process to Mr. Bob Szczesny, who was a registered agent for service of process.

"Corporations in virtually every state are required to appoint a registered agent upon whom service of process may be made . . . . [t]his we think, evidences a general reasonable belief that the proper service of process upon the agent will be effective service upon the corporation." Barker v. Latham Sparrowbush Assocs., 72 F.3d 246, 254 (2d Cir. 1995). Here, Plaintiff alleges, and Defendant does not dispute that Szczesny is listed as

4

the Registered Agent for Defendant with the Florida Department of State Division of Corporations and is the Official Correspondent with the United States Food and Drug Administration.  It is well-settled that "where the process server 'reasonably believed' that the person served was authorized to receive service of process on behalf of defendant, plaintiff is held to have fulfilled the requirements of § 311."  Avanti Enters. v. A&T Produce, Inc., No. CV-09-1185 (NGG), 2010 WL 3924771, at *2 (E.D.N.Y. July 21, 2010) (citation omitted).  Aside from having delivered process to an agent "authorized by appointment or by law," Defendant has also given every indication that Szczesny was an individual authorized to receive service.  Accordingly, this Court finds that Plaintiff has satisfied the requirements of § 311.  See Citadel v. Mgmt., Inc. v. Telesis Trust, Inc., 123 F. Supp. 2d 133, 145 (S.D.N.Y. 2000) ("Thus when a process server serves someone who does not have express authorization to accept service for a corporation, service is nonetheless proper under C.P.L.R. § 311 if it is made in a manner which, objectively viewed, is calculated to give the corporation fair notice of the suit."  (citations and quotation marks omitted)).

### 2. Lack of Personal Jurisdiction

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits – subject of course, to certain constitutional limits of due process."  Robinson, 21 F.3d at 510 (internal citations omitted).  To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the court must engage in a two-step analysis.  See Chloe v. Queen Bee of Beverly Hill, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 243-44 (2d. Cir. 2007)) ("Queen Bee").  The court must first apply the forum state's long-arm statute.  Id.  If the forum state's long-arm statute permits personal jurisdiction, the court must then analyze whether personal jurisdiction comports with the Due Process Clause of

5

the United States Constitution.  Id.

### a.   New York's Long-Arm Statute

Although the Court of Appeals for the Federal Circuit has appellate jurisdiction because of Plaintiff's patent infringement claim, the Federal Circuit defers to the relevant federal and state precedents in interpreting a forum state's long-arm statute.  E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co., Inc., No. 00 CUV,8670 LTS GWG, 2003 WL 22064259, at *5 (S.D.N.Y. Sep. 5, 2003).  New York's long-arm statute, C.P.L.R. § 302(a), authorizes the exercise of personal jurisdiction over a non-domiciliary, who in person or through an agent:

> 1.   transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2.   commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3.   commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>> (i)   regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>> (ii)   expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

N.Y.C.P.L.R. 302(a).

A defendant need not be present in New York to transact business there within the meaning of § 302(a)(1), as long as he engages in "purposeful activities or volitional acts through which he avails himself of the privilege of conducting activities within the . . . State, thus invoking the benefits and protections of its laws."  Queen Bee, 616 F.3d at 169

(quoting <u>Fischbarg v. Doucet</u>, 880 N.E.2d 22 (N.Y. 2007) (internal citations omitted)).  New York courts have construed § 302 as a 'single act statute,' meaning proof of one transaction in New York is sufficient to invoke jurisdiction, even if the defendant never enters New York, so long as the defendant's actions in New York were purposeful and there is a substantial relationship between the transaction and the claim asserted.  <u>Queen Bee</u>, 616 F.3d at 170 (citing <u>Kreutter v. McFadden Oil Corp.</u>, 527 N.Y.S.2d 195, 522 N.E.2d 40, 43 (1988)).

Plaintiff argues that Defendant is subject to personal jurisdiction under C.P.L.R. 302(a)(1), (2), or (3), and submits various sales documents establishing that Defendant has sold products containing Plaintiff's patent in New York.  Defendant responds that the licensing agreement was negotiated and entered into in Florida, and that the sales documents submitted by Plaintiff all pre-date Defendant's alleged breach of contract.  Because this Court finds that Defendant is subject to personal jurisdiction pursuant to § 302(a)(1) it need not consider whether personal jurisdiction could also be found under §§ 302(a)(2) and 302(a)(3).

"Interpreting New York and Second Circuit cases, we have held that for a court to assert jurisdiction over a defendant under section 302(a)(1), the plaintiff must satisfy two requirements: (1) the defendant's business activities in New York must be activities by which the defendant projects itself into New York in a way as to purposefully avail itself of the benefits and protections of New York laws and (2) the plaintiff's cause of action must arise ouf of that business activity within the state."  <u>Steuben Foods, Inc. v. Shibuya Hoppmann Corp.</u>, No. 10-CV-781A, 2011 WL 3608064, at *4 (W.D.N.Y. Aug. 15, 2011) (quoting <u>Pieczenik v. Dyax Corp.</u>, 265 F.3d 1329, 1333 (Fed. Cir. 2001)) (citation omitted).

Here, Plaintiff has established the first requirement by providing this Court with an affidavit alleging that Defendant sells and ships goods to customers in the Western District

of New York, including devices that violate Plaintiff's patent.  (Carr-Stock Aff. ¶¶ 15, 16, 18, 21.)   That the sales transactions on which this affidavit is based pre-date the alleged breach is not fatal to Plaintiff's argument, where this Court has not granted leave for further discovery and where Defendant has submitted no affidavit that it does not continue to sell allegedly infringing goods in New York and the Western District.   Moreover, Plaintiff has provided a list of wholesalers, distributors, and retailers of  Defendant's products in New York and the Western District.   Although Plaintiff does not allege the existence of an interactive website that actively seeks customers in New York, or that Defendant attended trade shows in-state, this Court finds that, at this early stage of the proceedings, Plaintiff has met its burden of showing that Defendant has projected itself into New York by selling products directly to in-state customers and suppliers.

Similarly, Plaintiff has established the second requirement, the so-called 'nexus test.'  "A single business transaction is sufficient to satisfy the nexus test under section 302(a)(1), but the cause of action must arise from the transaction of business in New York.  Pieczenik, 265 F.3d at 1333.   Here, Defendant's New York sales of allegedly infringing goods are intimately tied to Plaintiff's patent infringement claim.   In cases involving claims of patent infringement, "the tortious act occurs where products are distributed and infringing sales are made."  Millennium, L.P. v. Dakota Imaging, Inc., No. 03 Civ. 1838(RWS), 2003 WL 22940488, at *5 (S.D.N.Y. Dec. 15, 2003).   Viewing the evidence in the light most favorable to Plaintiff, see Elecs. for Imagining, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003), this Court also credits Plaintiff's assertion that the products sold by Defendant in New York did, in fact, infringe on Plaintiff's patent.   Moreover, it appears from Plaintiff's submissions that these products are sold with a sufficient regularity to conform to Plaintiff's claims.

Accordingly, the Court finds that personal jurisdiction over Defendant is proper.

### b.      Due Process

Even if personal jurisdiction is proper under New York's long-arm statute, which it is here, "the Due Process Clause limits the exercise of jurisdiction to persons having certain 'minimum contacts' with the forum state." Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d Cir. 1997) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) ("Burger King") and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)).  Consistent with due process, a court may exercise personal jurisdiction only over a defendant whose "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980)).

### i.      Minimum Contacts

To justify the exercise of personal jurisdiction, there must be a showing of minimum contacts with the forum state or "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239- 40, 2 L. Ed. 2d 1283 (1958)).  This Court finds that Plaintiff has made such a showing.

As previously noted, Defendant has contacts with New York through its sales to customers and suppliers in New York.  Although Plaintiff has not alleged that Defendant is licensed to do business in New York, or has offices, agents, bank accounts, telephone or fax numbers there, parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.  Burger King, 471 U.S.

at 472-73.   Therefore, this Court finds that due process is not offended by holding Defendant accountable for the harm it allegedly caused in New York through its entry into New York's consumer market.

### ii.    Reasonableness

The United States Supreme Court has set forth five factors that must be considered when determining the reasonableness of a particular exercise of jurisdiction where an out-of-state defendant purposely avails himself of the forum state, so that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (internal quotation marks omitted).   A court must consider (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies.   Id.

Application of these factors supports finding personal jurisdiction over Defendants. As to the first factor, although Defendant is burdened by being made to travel from its principal place of business in Florida to New York for trial, when minimum contacts have been established, the interest of the plaintiff and forum's exercise of jurisdiction will justify even serious burdens placed on the out-of-state defendant.   Id. at 114.   Regarding the second factor, New York has a legitimate interest in adjudicating the dispute.   See Meyers v. ASICS Corp., 711 F. Supp. 1001, 1007 (C.D. Cal. 1989) (finding that under the reasonableness inquiry, California had an interest in preventing patent infringement from occurring within its borders where defendant allegedly sold patent-infringing products to California residents).   As discussed above, Defendant availed itself of the New York forum by selling goods that allegedly infringed on Plaintiff's patent.   Additionally, Plaintiff is a

10

resident of New York.  See Pearson Educ., Inc. v. Textbook Discounters, No. 10 Civ. 324(WHP), 2010 WL 3528866, at *2 (S.D.N.Y. Aug. 20, 2010) (finding second and third factors to weigh in plaintiffs' favor where several plaintiffs were residents of forum state). Therefore, this factor weighs in favor of exercising personal jurisdiction.  The third and fourth factors likewise weigh in favor of finding jurisdiction because Plaintiff has brought its claim in New York and New York has an interest in resolving the controversy efficiently. The fifth factor is neutral.

Accordingly, this Court finds that it can lawfully and reasonably exercise personal jurisdiction over Defendants under the Due Process Clause. See San Diego County Emps. Ret. Ass'n v. Maounis, 749 F. Supp. 2d 104, 118 n.2 (S.D.N.Y. 2010) (application of N.Y.C.P.L.R. § 302(a) meets due process requirements).

### 3.     Improper Venue and Motion to Transfer

Having found that this Court has personal jurisdiction over Defendant, it need not further consider Defendant's claim that venue in this district is improper.  "Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1280 (Fed. Cir. 2005) (citations omitted).  Accordingly, this Court must only consider Defendant's request that this matter be transferred to the Middle District of Florida.

### a.     Legal Standard

A district court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of the parties and witnesses, [and is] in the interest of justice."  28 U.S.C. § 1404(a).  The primary goal of § 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and

11

expense.  Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960).

In determining whether the interests of justice and convenience support transfer, district courts evaluate nine factors: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of the relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative financial means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight afforded plaintiff's choice of forum; and (9) judicial economy and the interests of justice. Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 285-86 (S.D.N.Y. 2004).  Courts have broad discretion in making determinations of convenience under § 1404(a) and notions of convenience and fairness are considered on a case-by-case basis.  D.H. Blair Co., Inc. v Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

### b.    Analysis

#### i.    Convenience of the Witnesses

"The convenience of both party and non-party witnesses is probably the single most important factor in the analysis of whether transfer should be granted."  Wagner v. New York Marriot Marquis, 502 F. Supp. 2d 312, 315 (N.D.N.Y. 2007) (internal quotation marks and citation omitted).  Courts accord non-party witnesses greater weight than party witnesses.  ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008).  In order to demonstrate the alleged inconvenience, the "party moving to transfer on the ground that witnesses will be inconvenienced is obliged to 'name the witnesses who will

be appearing and describe their testimony.'" Beatie & Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) (citing Schieffelin & Co. v. Jack Co. of Boca, Inc., 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989)).  But in cases where discovery has not been conducted, a party "will not be held to the requirement of stating with precision each witness and document."  Heyco, Inc. v. Heyman, 636 F. Supp. 1545, 1549-50 (S.D.N.Y. 1986).

Here, Defendant has made no effort to identify non-party witnesses.  Instead, Defendant focuses on the fact that those individuals with knowledge of the goods sold are located in Florida, though these would presumably all be party witnesses.  Plaintiff, by contrast, has identified Defendant's customers in New York and argued that their testimony will be relevant to show that Defendant sold infringing devices.  A court "must evaluate the materiality of the testimony that the witnesses may provide."  Seltzer v. Omni Hotels, No. 09 Civ. 9115(BSJ)(JCF), 2010 WL 3910597, at *2 (S.D.N.Y. Sep. 30, 2010) (quoting Herbert Ltd. P'ship, 325 F. Supp. 2d at 286).  Here, it is unlikely that Defendant will dispute that it sold a particular product in New York.  Far more likely is that the dispute will center on the terms of the licensing agreement and on whether the products sold infringe on Plaintiff's patent.  Nevertheless, the Court is aware of the early stage at which the litigants find themselves, and recognizes that Plaintiff has identified non-party witnesses, and that those witnesses are located in New York.

All other witnesses are party witnesses.  Although "the convenience of non-party witnesses is accorded more weight than that of party witnesses," party witnesses are still relevant. ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d at 547.  Here, Defendant argues

that "all of the persons with knowledge of the manufacture and sale of the product at issue reside and are employed in the State of Florida." (Reply Affidavit of J. Mark Gruber, Esq., Docket No. 10, ¶ 10.) However, Defendant neither identifies nor describes these witnesses and their expected testimonies. Without more, this Court cannot know the significance of these individuals' testimonies.

Consequently, and in consideration of potential non-party witnesses, this Court finds that this factor weighs slightly against transfer.

## ii.      Convenience of the Parties

Courts find this factor to weigh in favor of transfer when the "inconvenience [to the moving party] could be completely eliminated without substantially adding to the non-moving party's inconvenience." Farrior v. George Weston Bakeries Distribution, Inc., No. 08-CV-2705, 2009 WL 113774, at *6 (E.D.N.Y. Jan. 15, 2009) (citing Frame v. Whole Foods Market, Inc., No. 06-CV-7058, 2007 WL 2815613, at *6 (S.D.N.Y. Sep. 24, 2007)). "Where the transfer would merely shift the inconvenience from one party to the other, the Court should leave the plaintiff's choice of venue undisturbed." Id. at *6 (citing Wagner, 502 F. Supp. 2d at 316). Here, Defendant has failed to describe how Plaintiff would not be inconvenienced were the case transferred to the Middle District of Florida. Further, Plaintiff actually resides in this district, and it is hard to see how she would not be comparatively inconvenienced by being required to litigate outside this district.

Accordingly, this factor is neutral.

## iii.     The Location of the Relevant Documents

"The location of relevant documents is largely a neutral factor in today's world of

faxing, scanning, and emailing documents." <u>Am. Steamship Owners Mut. Prot. & Indem.</u> <u>Ass'n, Inc. v. LaFarge N. Am., Inc.</u>, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007). Accordingly, the Court finds this factor is neutral.

### iv.   The Locus of the Operative Facts

"In a patent infringement action, the locus of operative facts is the jurisdiction where the design and development of the infringing patent occurred." <u>Whitehaus Collection v.</u> <u>Barclay Prods., Ltd.</u>, No. 11 Civ. 217(LBS), 2011 WL 4036097, at *2 (S.D.N.Y. Aug. 29, 2011) (quoting <u>Bristol-Myers Squibb Co. v. Andrx Pharms., LLC</u>, No. 03 Civ. 2503(SHS), 2003 WL 22888804, at *3 (S.D.N.Y. Dec. 5, 2003)).   Defendant's principal place of business is located in the Middle District of Florida.   There is no evidence that Defendant designed or developed its product anywhere else.   Furthermore, although Plaintiff argues that Defendant sold the infringing goods in New York, "where defendants' products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override the other factors favoring transfer." <u>Id.</u> (quoting <u>Bionx Implants, Inc. v.</u> <u>Biomet, Inc.</u>, No. 99 Civ. 740(WHP), 1999 WL 342306, at *4 (S.D.N.Y. May 27, 1999)).

This Court concludes that this factor weighs in favor of transfer.

### v.   The Availability of Process to Compel the Attendance of Unwilling Witnesses

This factor calls for a determination of which court possesses subpoena power to compel the attendance of unwilling witnesses. <u>See</u> <u>Beatie</u>, 431 F. Supp. 2d at 397-98. Here, the Middle District of Florida would have power to subpoena witnesses residing there.   However, these witnesses all appear to be party witnesses.   By contrast, this Court would have the power to subpoena witnesses in the Western District of New York,

15

including the only potential non-party witnesses.  Consequently, this factor is neutral or weighs slightly against transfer.

### vi.    The Relative Financial Means of the Parties

Courts should consider the relative financial means of the parties where apparent disparity exists between them.  <u>Blass v. Capital Int'l Sec. Group</u>, No. 99-CV-5738 (FB), 2001 WL 301137, at *6 (E.D.N.Y. Mar. 23, 2001).  Neither party has submitted evidence or strongly argued that the other has substantially greater financial assets to litigate this matter.  Accordingly, this Court finds this factor is neutral.

### vii.   The Comparative Familiarity of Each District with the Governing Law

This factor supports transfer where a federal court based in one state is asked to apply the law of another state.  <u>See Heyco</u>, 636 F. Supp. at 1550-51.  Here, Plaintiff brings two claims.  The first claim is for patent infringement and arises under federal law. The second claim is for breach of contract and would likely be governed by a Florida choice-of-law provision in the licensing agreement.  <u>See Burns v. Del. Charter Guarantee & Trust Co.</u>, No. 10 Civ. 4535, 2011 WL 2314835, at *6 (W.D.N.Y. June 8, 2011) (New York courts will enforce choice-of-law clauses so long as chosen law bears a reasonable relationship to parties or transaction).  However, the record is incomplete concerning this point.  Moreover, Plaintiff's breach of contract claim appears premised on her patent infringement claim.  As a result, Plaintiff's claims are predominantly federal, and this factor is neutral.

### viii.  The Weight Afforded to Plaintiff's Choice of Forum

Ordinarily, a plaintiff's choice of forum is accorded relatively greater importance

than other factors.  Emblaze Ltd. v. Apple, Inc., No. 10 Civ. 5713(PKC), 2011 WL 724275 (S.D.N.Y. Feb. 25, 2011) ("The plaintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of a transfer.").  The weight afforded this choice is reduced where a plaintiff brings suit outside his home district, or where the operative facts have no connection to the chosen district.  See Herbert Ltd. P'ship, 325 F. Supp. 2d at 291.  Here, Plaintiff has brought suit in his home district.  Therefore, although the locus of operative facts is in the Middle District of Florida, this factor does not weigh in favor of transfer.

### ix.    Judicial economy and the interests of justice

Neither party lingers on the topic of judicial economy or the interests of justice. Nevertheless, "[t]he relative docket conditions of the transferor and transferee courts are relevant to the determination of a motion to transfer venue pursuant to 28 U.S.C. § 1404(a)."  Eichenholtz v. Brennan, 677 F. Supp. 198, 202 (S.D.N.Y. 1988).  Courts have measured docket congestion by considering the median disposition time to resolve a case, see In re Hanger Orthopedic Group, Inc, Secs. Litig., 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006), or the comparative increase in cases over a 12-month period of time, Eichenholtz, 677 F. Supp. at 202.

Examination of each court's respective dockets reveals that this factor is largely neutral.[2]  This Court's median disposition time to resolve a civil case, as measured over the 12-month period ending December 31, 2010, is 8.2 months, versus the Middle District

---

[2]See Administrative Office of the United States Courts, Federal Judicial Caseload Statistics 2010, available at http://www.uscourts.gov/Statistics/StatisticalTablesForTheFederalJudiciary/December2010. aspx (last visited October 19, 2011).

of Florida's 8.0 months.  Over the same 12-month period, this Court's civil and criminal filings have decreased 1.1% and increased 1.5%, respectively, while the Middle District of Florida's civil and criminal filings have both decreased 4% and 4.8%, respectively. These differences are not so significant as to weigh in favor of transfer.  Accordingly, the Court finds this factor neutral.

. . .

After reviewing the relevant factors, the Court finds a balance of the nine factors weighs against transfer.  Although the locus of operative facts is clearly in Defendant's favor, Plaintiff is a resident of this district and potential non-party witnesses are located within this Court's jurisdiction.  Accordingly, Defendant's Motion to Transfer will be denied.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss or, Alternatively, to Transfer is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss or, Alternatively, to Transfer (Docket No. 6) is DENIED.

SO ORDERED.

Dated: November 20, 2011
       Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court